IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


CORDELIA JONES,

    Plaintiff,

vs.                                    CASE NO. 4:06cv570-SPM/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____/


## REPORT AND RECOMMENDATION

    This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

    Plaintiff, Cordelia Jones, applied for disability insurance benefits and supplemental security income benefits. Plaintiff was 52 years old at the time of the administrative hearing, had a 7th grade education, and had past relevant work as a motel housekeeper. Plaintiff alleges disability due to varicose veins in her legs, bilateral

carpal tunnel syndrome, and lower back pain.  The Administrative Law Judge found that while she could not do her past relevant work, she could do a reduced range of light work, and, therefore, based upon the testimony of a vocational expert, could do other jobs in the national economy.  This resulted in a finding that Plaintiff is not disabled as defined by Social Security law.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed

all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence in the record**

### Plaintiff's testimony

The administrative hearing was conducted on September 13, 2005. R. 217. Plaintiff testified that she was 52 years old at the time of the hearing and had completed seventh grade. R. 220-221. She has no transferrable vocational skills. R. 221. She said she could read, but not well, and could do simple mathematics. Id. She had a valid driver's license, but does not drive much. Id. She had previously worked for 30 years cleaning rooms and doing laundry at a motel. R. 222. She had also supervised others in this work. R. 224.

Plaintiff said she was unable to continue this work due to inability to stand. R. 224. She said her left leg would swell due to varicose veins. R. 225, 226. She had been having problems with her legs for about ten years. Id. She was unable to walk due to this condition and had to stop work in March, 2003. R. 225-226. She had received

treatment at the Bond Community Health Clinic from Nurse Bambrosher [sic, Bamgbose]. R. 226-227. She also went to the hospital in 2003 for treatment of her legs, but was only checked for blood clots and was told they would not treat her further there. R. 237. She was referred to the Bond Community Health Clinic. *Id.* Plaintiff said that the leg pain would come when she stood, but it came and went if she could sit down. R. 245.

Plaintiff said that support hose had been recommended for her legs, and she wore them sometimes. R. 233. She took over-the-counter pain medications, such as Tylenol and Aleve. *Id.* She said that while the pain level was eight on a scale of ten, with the pain medication her pain "eases off." R. 248.

Plaintiff also received treatment for carpal tunnel syndrome from Dr. True Martin. R. 228. She had last seen Dr. Martin in August, 2003, and had not seen him again in two years. R. 229. She said that she stopped seeing Dr. Martin for lack of health insurance and never received treatment for her hands. *Id.* She also had not returned to the Bond Community Health Clinic, she said, because she has no health insurance. R. 230. Plaintiff's attorney explained that the lack of treatment records was due to her inability to work and lack of ability to afford treatment. R. 232.

Plaintiff said that she was not then wearing splints on her hands and wrists, but splints had been recommended by Dr. Martin. R. 235. She had not worn splints for about a month. *Id.* She said she put splints on "sometimes," every two or three weeks or so, and wears them for a month. R. 236. She said that wearing splints "ease it down some," referring to the pain. R. 236. She had never had an injection for this condition. *Id.*

Plaintiff said that her hands were weak and she felt a "burning all down in the end of them." R. 243. She said her hands also would "go to sleep," and she had to shake them to feel better "and they hurt all up in here." *Id*. By that she meant the pain sometimes ran from her palms to her shoulders. R. 244. She said her left hand hurt more than her right, and hurt "about all the time now." *Id*. She said she had problems holding objects. R. 245.

Plaintiff testified that she thought that she could stand for about 30 minutes before having to sit down and rest. R. 234. She was uncertain about how far one-half mile is, but said she guessed she could walk that far. R. 234-235. Plaintiff said she could not sit for very long. R. 235. She said her back hurts "all the time" when she sits too long. R. 246.

Plaintiff said that during the day, she walks around, lies down, and does "little things." R. 239. She said that sometimes she cleans up or she cooks, but sometimes she cannot. *Id*. She is able to cook lima beans, black-eyed peas, and fried chicken. *Id*. She is also sometimes able to do laundry, clean dishes, and clean the bathroom. R. 240. She is able to drive to the grocery store once a month, and otherwise, she spends her time watching television. *Id*. She is able to feed and dress herself. R. 241. As a general rule, she is able to dress herself, though sometimes buttons are difficult. *Id*. She said she cannot grip a button to sew it on. R. 242. She is able to retrieve money from her purse to pay for groceries. *Id*. Plaintiff said she is able to socialize with family and friends, and to go to garage sales. *Id*.

**Medical evidence**

Plaintiff was seen in the Bond Community Health Center on April 2, 2003, complaining of pain in the lower left leg and varicose veins.  R. 142.  Varicose veins were noted.  R. 141.  Support stockings were recommended, and a referral was made to "We Care" for further treatment of her varicose veins.  *Id.*

Plaintiff sought treatment for her varicose veins on April 24, 2003, at the Tallahassee Regional Medical Center.  R. 116.  Plaintiff said that the Bond Clinic would not help her get a referral.  R. 117.  She was discharged and able to walk.  R. 118.  She was referred back to the Bond Clinic for referral to a peripheral vascular surgeon.  R. 119.  She was instructed to use thigh high support hose.  *Id.*

Plaintiff returned to Bond Clinic on May 5, 2003.  R. 135.  She had not returned to work since the April appointment.  *Id.*  She was out of her blood pressure medication.  *Id.*  Severe varicose veins were noted, and support stockings were prescribed.  *Id.*  A letter to her employer was prepared.  *Id.*  On the same day, Florence Bamgbose, a nurse practitioner, stated in a letter "to whom it may concern" that Plaintiff "has been unable to work because her job [the motel housekeeping job] requires frequent walking.  She is currently waiting for surgical intervention and cannot resume work until cleared."  R. 138.

On June 24, 2003, it was noted at the Bond Clinic that Plaintiff had been to the emergency room of the hospital for leg pain, a vascular surgeon was recommended (contrary to the note in the hospital records), and a referral was signed.  R. 134.  Plaintiff came to the Bond Clinic on June 30, 2003, wearing a support stocking on the left leg only.  R. 133.  She said she was scheduled for surgery on August 7, 2003.  *Id.*

Plaintiff returned to the Bond Clinic on July 20, 2003.  R. 132.  A support stocking was prescribed.  *Id.*

On August 5, 2003, Plaintiff was seen by J. Patrick Neal, a peripheral vascular surgeon.  R. 198.  Dr. Neal found that it was "painful when she stands up."  *Id.*  He said: "I have explained the risks, benefits and alternatives to the patient and she understand and desires to undergo the scheduled procedures."  *Id.*  There is no indication that any "scheduled procedures" took place thereafter.

On September 3, 2003, there is a noted in the Bond Clinic medical record that someone called Plaintiff to "find out if she's had surgery and when her [appointment] is.  Her employer wants to know when she can return to work."  R. 132.  It was noted on September 30, 2003, that Plaintiff was a "no show," and a contact letter was sent to reschedule as ordered by Nurse Bamgbose.  *Id.*  The Bond Clinic records of treatment end on September 30, 2003.

Plaintiff was examined on a consultative basis by Raymond Matson, M.D., on September 13, 2003.  R. 120-123.  Plaintiff related to Dr. Matson that she had experienced back pain in her lower and middle back for years, with pain and numbness in her left leg, left calf, and left lateral foot.  R. 120.  She also had varicose veins in the left leg.  *Id.*  Dr. Matson noted the referral for surgery for the varicose veins, and said that the surgery "will apparently be done in September 2003."  *Id.*

Dr. Matson also noted that Plaintiff had a diagnosis of carpal tunnel syndrome in both hands by nerve conduction studies (though such studies are not in this record).  *Id.*  Plaintiff said that she had pain and numbness in the forefinger and thumb, numbness in all fingers, worse on the left than the right.  *Id.*  Plaintiff said she currently had "some loss

of grip and occasionally drops things from both hands."  *Id*.  He noted that she was "to see a neurologist regarding this problem in the near future, under the guidance of Vocational Rehabilitation."  *Id.*

Plaintiff told Dr. Matson that she did some cooking and cleaning, had trouble sitting for two hours due to her back, could walk up stairs, had trouble walking very far due to pain, could lift and stoop to some degree, could dress herself, and could write with a pencil.  R. 121.  She told Dr. Matson that she drove occasionally, had trouble opening jars, could shop for groceries, and went places to visit family and friends.  *Id*.  Her pain medications were over-the-counter preparations.  *Id.*

On physical examination, Plaintiff's range of motion, with the exception of straight leg raising, appears to have been unimpaired.  R. 122.  Straight leg raising was to only 45 degrees due to pain.  *Id*.  Severe varicose veins on the left calf and ankle were noted.  *Id*.  Plaintiff's upper body motor strength was unimpaired.  R. 123.

On examination, Dr. Matson did not find any significant impairment of Plaintiff's hands.  R. 123.  He stated:

> Finger dexterity is normal.  Thumb to forefinger opposition strength is normal.  There is no thenar atrophy.  There are some sharp pains radiating in to the thumb and forefinger on pressure over the right wrist area.

*Id*.  Dr. Matson diagnosed carpal tunnel syndrome, with symptoms increasing, however.  R. 123.

Dr. Matson's functional assessment was that Plaintiff had had a long history of low back pain "with no clearcut radicular signs at the present time."  R. 123.  He said that most of Plaintiff's pain was related to her severe varicose veins on the left lower leg and ankle.  *Id*.  Dr. Matson said that Plaintiff could be expected to sit for six hours a day,

stand for two hours a day, and did not require an assistive device.  *Id.*  He thought that she could frequently lift 20 pounds, would have occasional postural limitations due to low back pain, and "[r]eaching, feeling, and fingering may well be restricted to some extent because of the pain and numbness in the forefingers and thumb bilaterally."  *Id.*  He noted a history of dropping things and probable carpal tunnel syndrome.  *Id.*

     Plaintiff was examined by Dr. J. True Martin for carpal tunnel syndrome on September 17, 2003.  R. 156.  Dr. Martin said that Plaintiff had been diagnosed with carpal tunnel syndrome several years earlier, and the condition had increased in severity such that "she will consider carpal tunnel releases."  *Id.*  He said:  "Prior to this time, she did not want invasive treatment; however, she is now dropping things and has difficulty feeling objects and using her hands."  *Id.*  On examination, Dr. Martin found decreased sensation to touch in Plaintiff's second, third, and fourth digits bilaterally.  R. 157.  He also found positive Tinel's sign.[1]  *Id.*  Dr. Martin intended to confirm his diagnosis of bilateral carpal tunnel syndrome with an electromyogram (EMG) test and nerve conduction velocity studies.  *Id.*  He thought that in "all likelihood, she will require carpal tunnel releases."  *Id.*  Plaintiff was to return to see him at the time of the EMG.  *Id.*  There is no record that Plaintiff returned to see Dr. Martin, had the studies, or that she had carpal tunnel release surgery.

---

[1] Tinel's sign is:  "A tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve.  It indicates a partial lesion or the beginning regeneration of the nerve."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

**Vocational expert testimony**

David Pigue, the vocational expert, was asked by the Administrative Law Judge to hypothetically consider that Plaintiff was 52 years of age, with a limited seventh grade education, and a past work history of unskilled work and a future ability to do only unskilled work. R. 254-255. He asked Mr. Pigue to assume that Plaintiff could stand or walk during an eight hour workday a total of four hours, and could sit² for four hours. R. 255. The ALJ asked Mr. Pigue to assume that Plaintiff would have to alternate sitting, standing, and walking every 30 to 60 minutes. *Id*. He assumed that Plaintiff could occasionally bend, stoop, crouch, crawl, kneel, and climb, and could frequently reach, handle, hold, grasp, finger, and manipulate, but that fine manipulation could be done only occasionally. *Id*. He said that Plaintiff should be assumed to be able to lift up to 20 pounds occasionally, for one-third of the workday, and could lift 10 pounds more frequently. *Id*. The expert said that while Plaintiff could not return to her past work as a motel housekeeper, she do work as a parking lot attendant, office helper, toll collector, storage facility rental clerk, and mail clerk. R. 255-256.

**Legal analysis**

### Whether the ALJ erred by not finding Plaintiff's carpal tunnel syndrome to be a "severe" impairment at step 2 of the analysis

The Administrative Law Judge determined that Plaintiff's carpal tunnel syndrome was not a "severe" impairment at step 2. He reasoned that it was not "severe" because Plaintiff does not wear wrist splints and has not had release surgery. R. 18. He also

---

² The transcript has "six for four hours," but this obviously was "sit for four hours." R. 255.

reasoned that it was not "severe" since the diagnosis was based only on Plaintiff's subjective complaints and not confirmed by EMG or nerve conduction studies.  *Id.*

At step 2 of the analysis, the issue is whether Plaintiff has shown that she has a condition which has more than "a minimal effect on her ability to:  walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."  Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).  "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

"[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' "  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), *citing* Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be rejected.  The claimant's burden at step two is mild."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying Brady).  A "severe impairment" is a "de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working."  Stratton v. Bowen, 827 F.2d 1447, 1452 n. 9 (11th Cir. 1987), *quoting* Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985).  It also has been characterized by the Supreme Court as a criterion which identifies "at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled

even if their age, education and experience were taken into consideration." *Id.*, *quoting* Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).

Bridges v. Bowen, 815 F.2d 622 (11th Cir. 1987) is instructive here.  In that case, the claimant's primary complaint was shortness of breath, but this condition was found to be relieved by medication.  815 F.2d at 625.  Other impairments were also controlled by medication or treatment.  *Id.*  The Commissioner's finding that the claimant did not, at step 2, have a "severe impairment" was affirmed since the claimant had mild impairments that were "amendable to medical treatment."  *Id.* at 626.

In the case at bar, the reasons given by the ALJ for finding Plaintiff's carpal tunnel syndrome to be not a "severe" impairment at step 2 are supported by substantial evidence in the record.  Dr. Martin's diagnosis was entirely based upon Plaintiff's subjective responses to his tests.  He wanted to do an EMG or nerve conduction studies to confirm his diagnosis, but these tests never occurred.  He also planned to do release surgery, but that never occurred either.  Plaintiff argues that it did not occur because she could not afford treatment, but there is nothing in the records from the Bond Clinic or Dr. Martin to indicate that the course of treatment that was planned did not take place because Plaintiff could not afford it.[3]  Indeed, the records show that Plaintiff was referred to Dr. Martin by the Bond Clinic, indicating that further treatment would have been

---

[3] The Secretary may deny benefits "when a claimant, without good reason, fails to follow a prescribed course of treatment that could restore her ability to work." McCall v. Bowen, 846 F.2d 1317, 1319 (11th Cir. 1988); Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988).  "In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ must find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored," and this finding itself must be supported by substantial evidence. Dawkins, 848 F.2d at 1213 (citations omitted).  Poverty excuses noncompliance.  *Id.*

forthcoming.  Also, Plaintiff testified that she knew that Dr. Martin had recommended that she wear wrist splints, but she had not worn them for a month.  R. 235.  She admitted that the splints helped with the pain.  R. 236.  This is some evidence that her wrist and hands would have improved had she worn the wrist splints.

Further, the medical findings show only mild impairment of the hands.  Dr. Martin's primary findings were that Plaintiff had decreased sensation in her fingers.  He did not find that she experienced pain.  Dr. Matson found that she experienced pain only when he applied "pressure over the right wrist area."  R. 123.  He also found that Plaintiff's finger dexterity and thumb to forefinger opposition strength were normal.  *Id*.

Despite these findings, Dr. Matson concluded that Plaintiff's "[r]eaching, feeling, and fingering may well be restricted to some extent because of the pain and numbness in the forefingers and thumb bilaterally."  *Id*.  This assessment, standing alone, might have been substantial evidence in the record for the ALJ to have found that Plaintiff had met the minimal proof requirements at step 2 to show that her carpal tunnel syndrome was a "severe" impairment.  Additionally, that Plaintiff had numbness in her fingers supports her testimony that she sometimes drops objects.  Relying upon this evidence, the ALJ might have found an impairment having more than a minimal interference with the ability to work.

This court's duty, however, is not to find some substantial evidence in the record for a contrary finding, but to determine whether the ALJ's findings are supported by substantial evidence in the record.  In this case, the ALJ's step 2 finding is supported by substantial evidence in the record.  Plaintiff's condition would have been eased had she worn the wrist splints prescribed and had she undergone release surgery, and the

objective findings of impairment of the hands and fingers show only a loss of sensation. There is no evidence that she would not have been provided tests, studies, and surgery had she followed up on Dr. Martin's recommendations.  Further, the ALJ was not required to give much weight to the opinion of Dr. Matson, who was only a one-time examining physician.  A consultative examination, that is, a one-time examination by a physician who is not a treating physician, need not be given deference by the Commissioner.  McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

If, however, it was error for the ALJ to not find Plaintiff's carpal tunnel syndrome to be a "severe" impairment at step 2, the error was harmless.  At step 5, the ALJ properly accounted for her carpal tunnel syndrome.  Again, it was reasonable for the ALJ to assume that Plaintiff would wear wrist splints and undergo release surgery, and that her symptoms would have been improved had she followed Dr. Martin's recommendations.  He then found that she might still have difficulty with fine manipulation on occasion, and added that to the hypothetical posed to the vocational expert.  In summary, this argument is not persuasive and does not alter the outcome.

**Whether the ALJ gave greater weight to non-examining physician than to Dr. Matson's opinion**

Plaintiff argues that the ALJ improperly failed to credit Dr. Matson's opinion that she could stand for only two hours in an eight hour day and, instead, improperly gave greater weight to the non-examining agency physician.  The non-examining physician determined that Plaintiff could sit or stand for six hours.  R. 146.  The ALJ did not give controlling weight to the opinion, but finding it consistent with the record, gave it some weight.  R. 19.  He also gave Dr. Matson's opinion some weight.  Id.  Since the ALJ was

not required to defer to either opinion, McSwain, *supra*, no error is shown.  Further, the ALJ ultimately found that Plaintiff could stand or walk four hours during an eight hour workday a total of four hours, and would have to alternate sitting, standing, and walking every 30 to 60 minutes.  As argued by Defendant, the ALJ properly harmonized the two medical opinions with Plaintiff's own subjective complaints.  Doc. 13, p. 9.

**Plaintiff's credibility and her inability to afford treatment**

Plaintiff contends that the ALJ improperly discounted her testimony due to her failure to seek medical attention.[4]  Doc. 12, p. 10.  She argues that the evidence shows that she could not afford medical attention.

While Plaintiff testified that she could not afford treatment, there was substantial evidence in the record to discount this testimony.  As discussed above, Dr. Martin prescribed EMG, nerve conduction studies, and carpal tunnel release surgery, and he appeared to believe that tests and surgery would be scheduled.  There is nothing in his records to indicate that Plaintiff could not receive this treatment for financial reasons.  Likewise, in August, 2003, a peripheral vascular surgeon, Dr. Neal, planned vascular surgery for Plaintiff's varicose veins.  R. 198.  Thus, the records indicate that Plaintiff was seen by several health care providers regardless of her financial circumstances, and it is reasonable to conclude that one way or another, she would have received the recommended course of treatment for both her varicose veins and her carpal tunnel syndrome had she followed-up.  Plaintiff did not follow other forms of prescribed

---

[4] The reasons articulated for disregarding the claimant's subjective testimony of symptoms must be based upon substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

treatment, either. She was prescribed a support stocking, but did not regularly wear one, and she did not regularly wear wrist splints. It was reasonable for the ALJ to conclude that she did not follow these recommended treatments because she did not need to do so, thereby diminishing her credibility.

**Conclusion**

Thus, considering the record as a whole, the findings of the Administrative Law Judge are based upon substantial evidence in the record. Accordingly, the decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on June 29, 2007.

s/  William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**